875 F.2d 315
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Vernon E. MARTENS, M.D., Plaintiff-Appellant,
v.
FIRST NATIONAL BANK OF MARYLAND, Defendant-Appellee.
 No. 88-3154.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 12, 1989.
Decided May 5, 1989.
 
 Lee H. Karlin for appellant.
 Edward Mark Buxbaum, Russel L. Beers, Whiteford, Taylor & Preston on brief, for appellee.
 Before ERVIN, Chief Judge, and HARRISON L. WINTER and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Vernon E. Martens, erstwhile treasurer of the now defunct Euro Motors, Inc. ("Euro"), sued First National Bank of Maryland ("First National") to recover a sum Martens had tendered as security for a First National loan to Euro. The district court, noting several obstacles in Martens' path, dismissed the suit on First National's motion for summary judgment. We affirm.
 
 I.
 A.
 
 2
 The evidence before us indicates a business arrangement gone sour for Martens. Euro was a Maryland corporation apparently formed to import into the United States automobiles shipped by Euro Motors International, Inc., a Belgian company. Christian Camenisch was Euro's president, Michael Kelly its vice president, and Martens its treasurer. Herbert Schluderberg and Donna Grossman were loan officers for First National.
 
 
 3
 These five, with Steven Thomas, Euro's lawyer, met on November 14, 1984, to discuss a loan from First National to Euro. At the meeting, First National agreed to give Euro a $150,000.00 line of revolving credit. Martens agreed personally to pledge a $150,000.00 certificate of deposit ("CD") to secure disbursements under the line of credit. The parties executed a Corporate Banking and Borrowing Resolution, a Promissory Note, and a Security Agreement. The Resolution recites that all three Euro officers must sign any revolving credit or other borrowing agreement. All three officers signed the Promissory Note at the November 14 meeting. The Security Agreement recites that it is in respect of any loans made or to be made by First National.
 
 
 4
 On November 19, 1984, Martens' check to First National cleared and First National credited $142,500.00 to Euro's account. On November 27, 1984, First National used Martens' check to purchase a $150,000.00 CD in Martens' name. On December 11, 1984, Martens asked Grossman why he had not yet received any documentation for his check. Grossman responded in a letter that told of the CD, its interest rate and May 20, 1985 maturity date, and noted that "[the CD] is pledged as collateral for a loan to Euro...." Martens says he did not read the letter to state that First National had already credited funds to Euro, but only that it was holding the CD to secure prospective credits.
 
 
 5
 Martens definitely learned of the November 19 credit in a letter from First National dated January 7, 1985. Apparently, the relationship between Martens and his co-venturers had begun to unravel by that date. Martens quickly wrote back, stating "[t]here are a number of irregularities and I request that no further commitments be made against the CD."[1]
 
 
 6
 Martens' action depends partially on an oral representation that Martens alleges First National made at the November 14 meeting. Martens stated in his complaint that First National presented him with a "Time Demand Business Promissory Note", a "Security Agreement Assignment of Deposit Account Form", and a "Financing Statement."[2] Martens believed that the documents had not been completed by the end of the meeting. He also discovered, and told First National, that he had left his reading glasses at home and so was unable to read the fine print on any of the documents.
 
 
 7
 Martens nonetheless signed the Note and the Security Agreement and gave First National his $150,000.00 check. Martens proposes, though, that First National promised not to deposit the check or disburse funds to Euro until it had sent copies of the executed documents to Martens and received his signed Financing Statement. Because he did not receive copies of the executed forms or, until Grossman's December 11 letter, any word on the fate of his check, Martens never returned the Financing Statement.
 
 B.
 
 8
 Martens' complaint, filed initially on January 6, 1988, in the District Court for the District of Columbia, alleged negligence, breach of express and implied contracts, conversion, unjust enrichment, and breach of fiduciary duty. First National first moved to dismiss or for summary judgment, and subsequently for removal to the District of Maryland under 28 U.S.C. Sec. 1404(a). The court promptly transferred the case without addressing the dispositive motions.
 
 
 9
 The transferee court elected, with the parties' accession, to apply District of Columbia law to the statute of limitations defense First National had interposed, and Maryland law to the remaining issues. The court held that Maryland would not recognize Martens' negligence claim and that, in any event, the claim was time-barred. The court concluded that the contract claims also foundered on two shoals, the parol evidence rule and, again, the statute of limitations. The court ruled finally that First National had otherwise been within its rights to liquidate the CD, and accordingly ruled against Martens on his remaining counts.
 
 II.
 
 10
 Martens appears to present in this appeal the same arguments and evidence the district court found unpersuasive. We recognize our duty closely to re-examine a disposition on summary judgment. Having done so, we are satisfied that the district court did not err in its appraisal of the pertinent law or its conclusion that the evidence left no genuine issues in Martens' favor. We accordingly affirm on the basis of the district court's opinion. Martens v. First Nat'l Bank, CV No. JFM-88-1118 (D.Md. Jan. 23, 1988).
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 In this letter to Grossman, dated January 14, 1985, Martens indicated that he had not known until after the November 14, 1984, meeting that Euro existed and that he was its treasurer. We note that the Corporate Resolutions executed at this meeting list Martens as "Treasurer", that Martens signed the Promissory Note on a line reserved for a corporate officer's signature, and that the handwritten indication "Treas." follows Martens' signature on the Note
 A January 21, 1985, letter from Grossman to Martens' attorney indicated that First National had disbursed funds to Euro on November 19, 1984, and then, at the request of Camenisch and Kelly, but apparently unbeknownst to Martens, wired the funds to Euro Motors International. The letter also stated that Camenisch was then in Belgium trying either to expedite the shipment of cars to Euro or to recover the transferred funds, and that Camenisch would return shortly with news about whether Kelly had defrauded his fellows.
 
 
 [2]
 The first two documents appear to be the Note and Security Agreement to which we referred earlier. A copy of the "Financing Statement" does not appear in the record. We note that Maryland apparently would not have required First National to file a financing statement to perfect its security interest in the CD. Md.Com.Law Code Ann. Sec. 9-305 (West Supp.1988). Whether the "Financing Statement" was some sort of personal or corporate financial disclosure form, or some other request for information, we do not know